Thomas P. Hanrahan, SBN 110609
thanrahan@sidley.com
Melissa O. Evidente, SBN 266730
mevidente@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for ZELTIQ AESTHETICS, INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZELTIQ AESTHETICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BTL INDUSTRIES, INC., a Delaware corporation; and SATURN CONSULTING LLC dba Monarch Laser Services,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF:**<br><br>**(1) VIOLATION OF LANHAM ACT**<br>**(2) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**<br>**(3) VIOLATION OF MASSACHUSETTS GENERAL LAWS CH. 93A** |

Plaintiff Zeltiq Aesthetics, Inc. ("Zeltiq") alleges against Defendants BTL Industries, Inc. ("BTL") and Saturn Consulting LLC dba Monarch Laser Services ("Monarch") (collectively, "Defendants") as follows:

1. Zeltiq brings this action under the Lanham Act, 15 U.S.C. § 1125(a), the California Unfair Competition Law, Bus. & Prof. Code § 17200, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, against BTL and Monarch to remedy unlawful promotion and sale by BTL and Monarch of a medical device known as "Vanquish." Among other unlawful conduct, the promotion and sale of the Vanquish device for use in reducing body fat violates the Sherman Food and Cosmetic Law, Cal. Health & Safety Code §109875 *et seq*.

2. BTL and Monarch promote the Vanquish device in California and throughout the United States through means that falsely imply and suggest that the Vanquish device has

received clearance from the U.S. Food and Drug Administration ("FDA") for use in fat reduction and related body sculpting.  In fact, the FDA has not granted clearance or other approval to BTL or Monarch to promote, market or sell Vanquish as a device for reducing fat or any contouring of the body.  The Vanquish device is therefore misbranded under California's Sherman Law and may not be sold or promoted for fat reduction or body sculpting.  Further, BTL's promotion of the Vanquish device for use in fat reduction as if it had received FDA clearance is deceptive and unlawful under the Lanham Act as well as California and Massachusetts law governing deceptive advertising and promotion.

3. Zeltiq manufactures and sells a fat reduction treatment under the brand name "CoolSculpting." CoolSculpting is a Class II medical device that *is* cleared by FDA for cold-assisted lipolysis, *i.e.,* shaping certain parts of the body (abdomen and flanks) by treating fat cells in those areas.

4. BTL and Monarch promote the Vanquish device as a direct competitor of Zeltiq's CoolSculpting technology, and seek to free-ride on Zeltiq's FDA clearance for affecting the appearance of the abdomen and flank in order to gain a competitive advantage.

**JURISDICTION AND VENUE**

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because certain claims arise under the federal Lanham Act, 15 U.S.C. § 1125.  The Court further has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because those claims arise out of and are so closely related to the claim within this Court's original jurisdiction that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that BTL resides in this District because it is subject to jurisdiction in California and thus deemed a resident of California under 28 U.S.C. § 1391(d), and a substantial part of the conduct at issue in this action occurred in this District.

**INTRADISTRICT ASSIGNMENT**

7. Pursuant to Local Rule 3-2(d), this action is properly assigned to the San Francisco Division or the Oakland Division of this Court because a substantial part of the events or

omissions which give rise to the claim occurred in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo and/or Sonoma.

## PARTIES

8. Zeltiq, which was founded in 2005, is a medical technology company focused on developing and commercializing products utilizing its proprietary controlled-cooling technology platform. Its first commercial product, the CoolSculpting System, is designed to safely, noticeably and measurably reduce the appearance of fat in specific areas of the body. It is the most widely available non-invasive fat reduction procedure in the world. To date, more than 1,900 systems in over 55 countries have performed more than 800,000 treatments worldwide. Zeltiq's principal place of business is in Pleasanton, California.

9. BTL is incorporated in Delaware and maintains its principal place of business in Framingham, Massachusetts. It is a privately held company which appears to be a direct and indirect subsidiary of other BTL-named entities in Europe. BTL describes itself as one of the world's major manufacturers of medical and aesthetic equipment, specializing in physical therapy, cardiology and medical aesthetics. BTL's business strategy is "to rapidly establish itself as a strong force in the Aesthetic market, both in the United States and Internationally." http://www.btlmed.co.uk/catalogue/aesthetic-medicine/.

10. Monarch is a dba for Saturn Consulting LLC, which appears to conduct its business out of a residential address in Laguna Niguel, California. Upon information and belief, Monarch is operated by Kevin Meyers, who resides at the Laguna Niguel address.

## BACKGROUND

11. In recent years, strong demand has developed for ways to improve and enhance physical appearance and address health concerns related to body fat. Invasive procedures (such as liposuction and tummy, arm, and thigh tucks) and minimally-invasive procedures (such as laser assisted liposuction) can effectively reduce fat but involve surgical procedures that require significant physician skill and resources, may involve pain, downtime, and expense for the patient, and carry the risks associated with any surgical procedure.

12. Existing non-invasive procedures, which currently include those based on radio frequency, laser, or high intensity focused ultrasound, avoid the patient downtime and high costs of invasive and minimally-invasive procedures, but often are painful, produce limited or inconsistent results, may require multiple treatments, and ongoing maintenance treatments. In addition, before the development of, and with the exception of, Zeltiq's CoolSculpting technology, non-invasive procedures are not capable of selectively targeting fat cells, which can lead to damage to the surrounding tissues.

13. Zeltiq's CoolSculpting system is designed to selectively reduce fat through precisely controlled cooling to reduce the temperature of fat cells in the treated area, which is intended to cause fat cell elimination through a natural biological process known as apoptosis, without causing scar tissue or damage to the skin, nerves, or surrounding tissue. CoolSculpting is clinically proven to reduce fat bulges in a 60-minute procedure, allowing most patients to achieve noticeable and measurable aesthetic results without the pain, expense, downtime, and risks associated with other invasive, minimally-invasive, and noninvasive procedures.

14. Zeltiq received FDA clearance for its CoolSculpting device in September 2010 for cold-assisted lipolysis of the flank, or "love handles," and similar clearance for treatment of the abdomen in May 2012. Zeltiq developed this technology for a novel indication. Thus, Zeltiq submitted clinical studies and other data to FDA to obtain 510(k) clearance for CoolSculpting.

15. FDA clearance or approval for an aesthetic device has substantial market value. FDA clearance or approval addresses common concerns of consumers that a device may be at best an unproven gimmick or experimental, or, at worst, dangerous.

16. BTL submitted to FDA, pursuant to Section 510(k) of the Federal Food, Drug, and Cosmetic Act, a notice of intent to market a device that is substantially similar to predicate devices already cleared by FDA. At that time, BTL called its device the "BTL Elite." Like the predicate devices identified in BTL's 510(k), the BTL Elite was designed to deliver heat to muscle tissue. This so-called "510(k)" process required BTL to demonstrate that its device was

substantially equivalent to its predicate devices when used according to its intended use. Thus, BTL asked for FDA clearance to market its device for

> use in applying therapeutic deep heat in body tissues for the treatment of selected medical conditions such as: 1. Relieving pain; 2. Reducing muscle spasm; 3. Increasing range of motion of contracted joints using heat and stretch techniques; and 4. Increasing blood flow to tissues in the treatment area.

17. FDA cleared the BTL device for that limited use:

> "Indications for Use: Indications for use in applying therapeutic deep heat in body tissues for the treatment of selected medical conditions such as: 1. Relieving pain; 2. Reducing muscle spasm; 3. Increasing range of motion of contracted joints using heat and stretch techniques; and 4. Increasing blood flow to tissues in the treatment area."

18. The indications for use cleared by FDA do not claim or reference any use to reduce fat in any areas of the body.

**BTL Launches and Promotes Vanquish as a Fat Reduction Device.**

19. Notwithstanding the limited scope of the FDA 510(k) clearance, BTL wanted to capitalize on the growing body shaping and fat reduction market. Notwithstanding that it had no product cleared or approved for that market, BTL, later supported by Monarch, launched a marketing campaign to leverage the FDA clearance it did have by promoting Vanquish solely as a fat reduction device while stating that it had FDA clearance and implying, falsely, that this clearance was for the promoted use.

20. BTL intended that consumers and others would gain the false impression that the FDA clearance for the Vanquish device was for use in fat reduction. BTL and Monarch deliberately created that misimpression and deliberately omitted any disclosure to correct it. BTL made the literally correct claim that the device is FDA-cleared, but then failed to provide the critical clarification that it was not cleared for the only use BTL promoted. BTL adopted this strategy in order to rouse enthusiasm among doctors and consumers for a new device for body contouring and fat reduction.

**Recruitment of Physicians**

21. BTL launched its recently cleared product, now called "Vanquish," at various medical conferences in the Spring of 2013. Those conferences included a meeting in April 2013 in Boston of the American Society for Lasers Medicine and Surgery; a meeting of the American Academy of Dermatology in Miami in March 2013; and a meeting in April 2013 in New York of the American Society for Aesthetic Plastic Surgery. At those conferences, BTL did not talk about using Vanquish to treat aches and pains – the only use cleared by FDA. Instead, BTL representatives touted Vanquish as able to "reduce fat" in four sessions.

22. Physicians understood the message immediately. BTL encouraged them to promote Vanquish as a fat reduction device despite the lack of FDA clearance for that use. And physicians have done so. For example, in April 2013, coincident with the launch announcement of Vanquish, a physician in Nevada touted the Vanquish as "a new fat-zapping device that's about to receive FDA approval." The same physician's **facebook** page employed photos provided by BTL and claimed that "Vanquish Melts Fat With No Pain." See attached Exhibit 1. A Texas doctor portrayed in a video posted on BTL's Vanquish website declares that the Vanquish device "shrinks fat cells." The same website purports to quote a number of other U.S. doctors extolling the benefits of the Vanquish as a fat reduction device.

23. In response to BTL's promotion, physicians' own websites now promote Vanquish for fat reduction. For example, Georgia plastic surgeon Brian Howard's website advertises "If you have been looking for a painless and non-invasive procedure for permanent fat removal and minimal risks, look no further than the Vanquish…" http://www.drbrianhoward.com/vanquish/. Dr. Asarch in Colorado touts "Dr. Asarch is 1 of Only 5 Physicians in the Country to Offer the New Vanquish Fat Reduction Treatment." http://blog.dermasparx.com/tag/asarch-center/page/5/. Dr. Cooper in Atlanta claims "Vanquish is a new, revolutionary procedure in permanent fat reduction." http://www.atlantadermatologyexperts.com/procedures/vanquish-laser. Those websites rarely even mention the limited FDA clearance for the Vanquish, and never disclose that it lacks FDA clearance for fat reduction. This is exactly what BTL intended. Zeltiq is informed and believes that BTL has

licensed or otherwise authorized and encouraged physicians to promote the Vanquish device for a use the FDA has not cleared.

**Deceptive Media Promotion**

24.     BTL's promotion was not limited to medical conferences.  It also targeted consumers, by facilitating the placement of favorable articles in magazines marketed to women who were in BTL's target demographic.  For example, BTL layered on the cover of the Summer 2013 issue of **New You** a number of promotional messages that urge readers to "conquer your unwanted fat with Vanquish;" describes Vanquish as "a new machine, zaps fat;" urges readers to "vanquish your fat" by using the new BTL device that "target[s] body fat" and is "proven to destroy fat cells." See attached Exhibit 2. No mention is made that Vanquish lacks FDA clearance for fat reduction therapy.

25.     For example, the March 7, 2013 issue of **allure** magazine, attached as Exhibit 3, lauds the Vanquish as "a fat reduction machine" that "may actually work."  The article notes that several other devices are "awaiting FDA approval" for fat reduction, and then comments that the Vanquish "is approved for deep-tissue heating, a known method for targeting fat."  No mention is made that Vanquish is one of the devices "awaiting FDA approval" and lacks any clearance by FDA for fat reduction.

26.     Video clips available on BTL's website feature United States doctors and BTL representatives extolling the virtues of the Vanquish device for fat reduction.  These doctors refer explicitly to fat reduction, and a BTL representative speaking in the clips describes how Vanquish targets fat cells and asserts "we are reducing fat."  http://www.btlaesthetics.com/en/in-the-media.html.

27.     BTL maintains a **facebook** page for the Vanquish device.  That page claims that Vanquish "Zaps Fat With No Pain."  A photo on that page promotes the potential to "make every day a *Skinny Jeans Day*," and urges the reader to "Conquer Your Unwanted Fat With Vanquish."  BTL's pages assert that Vanquish "targets fat around the midsection," and refer the reader to the supposedly "international" web site for more information.  See attached Exhibit 4.

**Deceptive Website Promotion**

28. In furtherance of BTL's unlawful scheme to promote the Vanquish device, BTL designed its website to mask the fact that FDA had cleared the Vanquish only for treatment of aches and pains, while implying that FDA had cleared the device for far reduction. BTL set the stage for this very early, before the formal launch of Vanquish. In March 2013, BTL sent an email to physicians which described its business as the manufacture of devices that "represent the best in body contouring, fat reduction, . . ." See attached Exhibit 5. At that time and now, BTL had not – and still has not – received any clearance from FDA to sell any device for body contouring or fat reduction.

29. To spread the fat reduction message directly, while trying to maintain a fig leaf of compliance with FDA requirements regarding off-label promotion, BTL created a transparent and porous website that includes "United States" web pages that are supposedly distinct from its "international" web pages, but in fact are inseparable. The superficial distinction between BTL's "United States" web page and its "international" web pages is mere pretense. BTL not only made it easy for United States physicians and consumers to read its fat reduction message; BTL directly encouraged physicians and consumers to visit its "international" web pages to get information about Vanquish. For example, the invitation BTL sent to physicians attending the ASLMS and ASAPS meetings described above directs physicians to the "international" pages located at http://www.btlaesthetics.com/en/ to obtain information. See attached Exhibit 6.

30. BTL's web pages tout the fat reduction capability of Vanquish, while implying FDA clearance for fat reduction and omitting entirely any disclosure that FDA has *not* cleared Vanquish for that usage. The so-called "international" pages on the BTL website are in fact focused on the United States audience. The seamless integration between the "United States" web pages and the "international" web pages is evident in several ways:

   A. The "United States" web page for the Vanquish device is a single dark page that provides no information. It describes the Vanquish device as a "revolutionary" system, the "first and only non-invasive body treatment finally integrating all the most desired features." That phrase itself is

misleading.  The Vanquish device was cleared by FDA precisely because it is *not* revolutionary: it is "substantially equivalent" to its predicate devices, *i.e.*, it had the same intended use and the same technological characteristics as the predicate devices.  The web page notes, in dark font, that the device has FDA clearance "for deep tissue heating," but omits any disclosure of the exact scope of the FDA clearance, including the specific conditions it is indicated to treat, which do not include unwanted body fat.  The web page implies that there is something novel and particularly desirable about the Vanquish device that is very different from well-established deep tissue heating for pain relief.  See attached Exhibit 7.

B. To get any understanding of what is supposedly "revolutionary" about Vanquish, or "the most desired features," the website directs the reader, in bright white eye-catching font, to "**GO TO INTERNATIONAL SITE**."  See Exhibit 7.  Any person viewing the web page can click directly to the "international" pages for more information.  Access to the "international" pages is not restricted to internet addresses outside the United States.

C. The linked pages make plain that BTL promotes the use of the Vanquish device "to eliminate fat cells."  To avoid any confusion or ambiguity about what BTL is selling, its website states clearly that "The Vanquish is for patients who have areas of unwanted fat."  BTL claims explicitly that the Vanquish "eliminates fat" and that it "was clinically tested and cleared."  See attached Exhibit 8.  The plain and intended implication is that the Vanquish was clinically tested by BTL for fat reduction, and then cleared by FDA for use in eliminating fat cells. That implication is false.

D. Asserting the safety of the Vanquish for fat reduction, the BTL website includes a graph purporting to show the temperature of fat versus skin and muscle while the device is employed.  See attached Exhibit 9.  BTL

asserts that the Vanquish heats the fat cells "to the point of apoptosis," *i.e.*, cell death.  See attached Exhibit 10.

E. To assure that the U.S. audience will hear and credit the message about fat reduction, the "international" web pages include supposed "buzz" about Vanquish, offering links to the articles noted above and several videos quoting U.S. doctors extolling the Vanquish technology for fat reduction.  See attached Exhibit 11.

F. The web pages promise more information is available by attending seminars and programs about the Vanquish – all in the United States. See attached Exhibit 12.

G. The international pages list BTL offices around the world, and identify the website for the U.S. office as www.exilis.com.  See attached Exhibit 13.  Clicking on that link takes one directly to the international page for the Exilis group of products, which includes the Vanquish device. http://www.btlaesthetics.com/en/.  That page explicitly promotes the Exilis brand as "reshaping [ ] targeted fat deposits" and includes a link to the Vanquish web page described above.

31. In all of these ways, BTL, with the cooperation and assistance of Monarch, continues to promote the Vanquish device directly to U.S. consumers for fat reduction, implying falsely that FDA has cleared it for that use, and intentionally failing to disclose the whole truth about the FDA clearance that a reasonable person needs to understand in determining whether FDA has cleared the Vanquish as a fat reduction device.

**Defendants Sponsor Workshops To Promote Vanquish For Fat Reduction**

32. As described above, the BTL website includes links to several workshops co-sponsored by BTL and Monarch.  One of these workshops was held in Los Angeles, at the Westin Hotel at Los Angeles International Airport on September 29, 2013.  The meeting agenda identifies Monarch and BTL as the sponsors.  Kevin Meyers of Monarch gave the welcome and introduction comments, and a representative of BTL, Scott Mills was in attendance as well.  Physicians who

wished to attend could sign up through a link on BTL's website, http://www.btlvanquish.com/us/seminars.html.

33. Signage at the workshop identified it as a BTL Physician Reception, and identified BTL as a sponsor. Dr. Amir Muradi was the main speaker, and focused his presentation on fat reduction and body contouring using BTL's Vanquish and Exilis machines. Slides shown at the meeting were "before and after" photos, supplied by BTL, depicting fat reduction and body contouring in patients treated with the Vanquish device.

34. Brochures and handouts at the meeting had the BTL logo on them and described the use of the Vanquish device for body shaping and contouring. A folder provided to attendees by Monarch included magazine articles such as the **allure** article described above and a collage of stories touting the use of Vanquish to "conquer your unwanted fat." See attached Exhibits 1 and 2.

35. Another set of marketing materials highlighted at the workshops featured a link to www.aestheticmarketingstore.com, a website on which BTL customers can purchase printed marketing brochures and in-office banners to promote the Vanquish and other BTL devices. The vast majority of marketing materials for the Vanquish device use images and slogans that advocate the system for body contouring and fat reduction. In stark contrast to FDA clearance of the Vanquish device for relief of pain, muscle spasms, and joint contractures, BTL promotes it with the theme to "Conquer Your Core with Vanquish" and "Banish the Bulge," and "Make them say . . . What ocean view?" In a not-so-subtle jab at Zeltiq, one poster entices with images of wondrously healthy models enticing customers with the slogan, "Don't be cool when you can sizzle." See attached Exhibit 15.

36. BTL and Monarch hosted a similar workshop in Carlsbad, California, in early October, 2013, at which similar materials were distributed.

37. The American Society for Dermatologic Surgery held its annual meeting in Chicago in October 2013. BTL was a "Brass Level" sponsor of that meeting. In connection with the meeting, BTL invited doctors to a "private demonstration" of the Vanquish device. The invitation

touted the device, depicted in a photo, as "a newly FDA cleared technology . . . for non-invasive body shaping." See attached Exhibit 14.  That representation is materially misleading.

## FIRST CLAIM FOR RELIEF

### (Violation of the Lanham Act)

38. Plaintiff repeats and incorporates by reference Paragraphs 1 through 36, above, as if fully set forth here.

39. Federal law bars any person from misrepresenting the characteristics or qualities of his goods.  15 U.S.C. § 1125.  One who violates this statute is liable in a civil action to any person who is or is likely to be damaged by such conduct.

40. Beginning in early 2013, and continuing to the present, in interstate commerce, Defendants have advertised and promoted, and sold or offered to sell the Vanquish product as a body sculpting medical device that will reduce fat in patients, and that it has been cleared by FDA for those purposes.

41. Defendants' descriptions and representations are false and untrue and are likely to deceive the public in that the Vanquish is in fact not FDA cleared for body sculpting or fat reduction.

42. Defendants have made these false descriptions and representations knowing at all times they were false and untrue.

43. These false descriptions and representations have confused and misled, and will continue to confuse and mislead, a substantial number of persons who receive them into believing that the Vanquish has been cleared and approved by FDA for body sculpting and fat reduction.

44. By the actions alleged herein, Defendants have violated the Lanham Act § 43(a), 15 U.S.C. § 1125(a), by using false or misleading descriptions and representations of fact in commercial advertising or promotion in connection with goods in interstate commerce, which descriptions and misrepresentations misrepresent the nature and quality of BTL's products.

45. Zeltiq competes with BTL in the market for fat reduction therapies, and has been or is likely to be damaged by Defendants' deceptive actions.

46. Zeltiq is therefore entitled to injunctive and other relief on account of Defendants' unlawful misrepresentations.

## SECOND CLAIM FOR RELIEF

**(Violation Of Bus. & Prof. Code Sec. 17200, *et seq.* – *Unlawful Conduct*)**

47. Zeltiq repeats and incorporates by reference Paragraphs 1-45, above, as if fully set forth here.

48. California has adopted a comprehensive regulatory framework for food, drugs, medical devices and cosmetics known as the Sherman Food Drug and Cosmetic Law, Cal. Health & Safety Code Sec. 109875 *et seq.* ("Sherman Law"). The Act defines a device as misbranded if its labeling is false or misleading in any particular. H&S Code § 11330. In particular, a device is misbranded if its labeling fails to include, *inter alia*, adequate directions for use and adequate warnings against unsafe methods of application. It is unlawful to sell a misbranded device.

49. Further, the Sherman Law bars sale of a new device unless it is a device reported under Section 510(k) of the federal Food Drug and Cosmetic Act, 21 U.S.C. § 360(k).

50. The Vanquish device is misbranded under the Sherman Act because it fails to include adequate directions for use in fat reduction, and fails to include adequate warnings of safety risks when so used.

51. Sale of the Vanquish for fat reduction further violates the Sherman Act because the Vanquish lacks a 510(k) clearance from the FDA for fat reduction.

52. California Bus. & Prof. Code Section 17200 bars, *inter alia*, unlawful conduct. A violation of the Sherman Law also violates Section 17200.

53. As a direct consequence of Defendants' unlawful conduct, Zeltiq has been injured, and therefore is entitled to an injunction barring the sale and promotion of the Vanquish as a device suited to reduction of fat.

**THIRD CLAIM FOR RELIEF**

**(Violation of Bus. & Prof. Code Section 17200 *et seq.* – Deceptive and Unfair Conduct)**

54. Zeltiq repeats and incorporates by reference Paragraphs 1-45, above, as if fully set forth here.

55. As described above, Defendants have engaged in a campaign of deceptive and unfair conduct in the promotion of the Vanquish device, in violation of California Bus. & Prof. Code Section 17200.

56. Defendants' conduct, as alleged above, is a deceptive and unfair business practice and constitutes unfair competition in violation of Section 17200.

57. Zeltiq and the public have been damaged by Defendants' violation of Section 17200, and Zeltiq is entitled to an injunction barring BTL from failing to disclose in all of its promotional materials for the Vanquish that the device lacks FDA clearance for fat reduction.

**FOURTH CLAIM FOR RELIEF**

**(Violation Of Massachusetts General Laws ch. 93A)**

58. Plaintiff repeats and incorporates by reference Paragraphs 1-45, above, as if fully set forth here.

59. Massachusetts Gen. Laws ch. 93A, §§ 1, *et seq.*, makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

60. As alleged above, Defendants engaged in unfair, deceptive, and unlawful marketing in violation of Massachusetts law by claiming FDA clearance for the Vanquish device in the context of promotion for use in fat reduction, thereby implying falsely that the Vanquish product had FDA clearance for body sculpting and fat reduction, and failing to disclose information necessary to make its statements about FDA clearance truthful and not misleading. Specifically, Defendants have failed to disclose that FDA has not cleared the Vanquish device for fat reduction.

61. Defendants' unfair and deceptive acts would cause, and were intended to cause, a consumer to believe, incorrectly, that the Vanquish was cleared by FDA for fat reduction.

62. On information and belief, Defendants conducted these unfair and deceptive acts within the Commonwealth of Massachusetts.

63. These unfair and deceptive acts have damaged, and may cause further damage, to Zeltiq's business, and accordingly, Zeltiq is entitled to an injunction barring Defendants from failing to disclose in all of its promotional materials for the Vanquish that the device lacks FDA clearance for fat reduction.

**PRAYER FOR RELIEF**

Zeltiq therefore asks for relief as follows:

1. Entry of an order enjoining Defendants from promoting the Vanquish device in any manner that suggests or implies that it enjoys clearance by FDA for fat reduction.

2. Entry of an order requiring Defendants to disclose prominently in all promotion for the Vanquish device that FDA has not cleared it for fat reduction, but FDA has approved other devices for that use.

3. An award of attorneys' fees as permitted by law.

4. Such other and further relief as the court may deem proper.

Dated: November 26, 2013

SIDLEY AUSTIN LLP

By: /s/ Thomas P. Hanrahan
    Thomas P. Hanrahan
    Melissa Evidente
    Attorneys for ZELTIQ AESTHETICS, INC.